CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
OCT 18 2005
JOHN F. CORCORAN, CLERK
BY: /s/ [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| M-CAM,<br><br>　　　　　　*Plaintiff,*<br><br>v.<br><br>RICHARD D'AGOSTINO,<br>IPI FINANCIAL SERVICES, INC.,<br>AND PLX SYSTEMS, INC.,<br><br>　　　　　　*Defendants.* | CIVIL ACTION NO. 3:05-CV-00006<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

Before the Court is Defendant IPI Financial Services, Inc.'s Motion to Compel Arbitration and Stay Proceedings, and Defendant PLX Systems, Inc.'s Motion to Stay. For the reasons stated below, this Court will grant the Motion to Compel in part and deny it in part. The Court will grant the Motions to Stay.

## I. BACKGROUND

Plaintiff M-CAM is a corporation which sells products to help value and validate intellectual property. Plaintiff alleges that Defendant Richard D'Agostino ("D'Agostino") enticed M-CAM into investing in and otherwise helping IPI Financial Services, Inc. ("IPI"), a company that Defendant was forming. D'Agostino allegedly promised to give M-CAM a 10% equity in IPI in exchange for M-CAM's aid and information. In March of 2001, M-CAM and D'Agostino, on behalf of IPI, entered into a NonDisclosure Agreement in which Defendants

allegedly agreed not to reveal M-CAM's confidential information to others. IPI also entered into a four-year Licensing Agreement with M-CAM in March of 2002, which guaranteed certain revenue to M-CAM in exchange for the sharing of its Patent Scoring System. M-CAM claims that it never received any of the promised revenue, nor did D'Agostino and IPI make good on any of their other promises. Instead, Defendants allegedly revealed M-CAM's confidential information to a third party, PLX Systems, Inc. ("PLX"), and kept all revenues for themselves. M-CAM has filed suit against D'Agostino, IPI and PLX.

IPI filed the current Motion to Compel claiming that an arbitration clause in the Licensing Agreement makes all of M-CAM's claims subject to arbitration, and a Motion to Stay the other causes of action. Defendant PLX filed a Motion to Stay the litigation, pending arbitration.

## II. REASONING

The Licensing Agreement between IPI and M-CAM includes an arbitration clause which provides that "any dispute or controversy *arising out of or relating to this Agreement* or any breach hereof shall be determined and settled by arbitration to be held in Charlottesville, Virginia...."IPI's Mot. Compel Arbitration, at 2 (emphasis added). M-CAM does not dispute that its Breach of Written Contract claim(Count 3) and part of its Fraudulent Inducement (Count 4) claim are subject to arbitration. Thus, the issue remaining is whether the arbitration clause is broad enough to encompass M-CAM's other claims.

IPI argues that the scope of the Licensing Agreement's arbitration clause is broad enough to encompass M-CAM's other claims against the company. Federal policy, as embodied in the

2

Federal Arbitration Act, 9 U.S.C. § 1, favors arbitration.[1] Therefore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Furthermore, "the reach of an arbitration clause is not restricted to those causes of action brought under the contract containing the clause, unless the parties draft a clause so restricted in scope." *Drews Distributing, Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001). Arbitration should be compelled unless "it may be said with positive assurance that arbitration clause is not susceptible of an interpretation that covers the settled dispute." *McAllister Bros., Inc., v. A & S Transp. Co.*, 621 F.2d 519 (2d Cir. 1980) (internal quotations and citations omitted).

In the instant case, IPI and M-CAM drafted a broad arbitration clause which encompasses any disputes "arising out of or relating to" the Agreement. If any of the claims have a significant relationship to the Licensing Agreement, those claims can be said to "relate to" that Agreement, and thus be within the reach of the arbitration clause. *See American Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 93 (4th Cir. 1996).

The Court finds that the arbitration clause does not encompass the NonDisclosure Agreement with IPI. That agreement includes a provision that any legal claims arising out of the agreement will be exclusively maintained in the state or federal courts of Virginia. Pl.'s Mem. Opp'n to Mot. Compel, Ex. 2. IPI argues that the Licensing Agreement trumps this clause. The Licensing Agreement provides that it "supersedes all previous communications, negotiations and

---

[1] M-CAM cited to Virginia law, not the Federal Arbitration Act, in their brief opposing this Motion. However, the majority of cases suggest that when a contract concerns a transaction involving interstate commerce (as in this case), federal law applies. *See* 9 U.S.C.A. § 2, John P. Luddington, Annotation, *Conflict of Laws As to Validity and Effect of Arbitration Provision in Contract for Purchase or Sale of Goods, Products, or Services*, 95 A.L.R.3d 1145 (2005) (citing cases).

3

agreements, whether oral or written with respect to the subject matter hereof." However, the Licensing Agreement refers solely to M-CAM's Patent Scoring System. The NonDisclosure Agreement concerns any confidential information that might pass between the two parties, and does not appear to contemplate the existence of a future Licensing Agreement. *See Drews Distributing, Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001). Therefore, the Licensing Agreement's arbitration provision does not counteract the above clause in the NonDisclosure Agreement, and the Motion to Compel will be denied as to this claim.

Nor does M-CAM's first claim relate to the Licensing Agreement in any way. M-CAM merely alleges that IPI and D'Agostino reneged on a promise to give 10% equity in IPI to M-CAM. IPI claims that the promise occurred in the course of negotiations for the Licensing Agreement, but the email which contains the promise makes no mention of such an agreement. The Court thus finds that IPI's claim is not sufficient to determine that the promise had a significant relationship to the Licensing Agreement, and the Motion to Compel arbitration for Count One will be denied.

However, M-CAM could rely on the Licensing Agreement in pursuing the other claims against IPI. Those claims include Fraudulent Inducement, Misappropriation of Trade Secrets, Common Law Breach of Confidentiality, Common Law Misappropriation, Common Law Unfair Competition, Common Law Conspiracy, and Statutory Conspiracy. All of these claims, to one extent or another, are based on the idea that IPI used and disclosed M-CAM's information, presumably including the Patent Scoring System, without permission. Because federal policy requires that all doubts be resolved in favor of arbitration, and because M-CAM could rely on the Licensing Agreement for each of these claims, the Fifth, Sixth, Seventh, Eighth, Ninth and Tenth

4

claims for relief can be said to have a significant relationship to the Licensing Agreement. *See American Recovery Corp.,* 96 F.3d at 94. Thus, the Court will compel arbitration for these claims.

The final issue here is whether the Court, after compelling arbitration in at least some claims for IPI and M-CAM, should stay all other proceedings, including those against PLX. "Considerations of judicial economy and avoidance of confusion and possible inconsistent results" suggest that all proceedings should be stayed until the arbitration is completed. *American Home Assurance Co. v. Vecco Concrete Construction Co., Inc. of Virginia,* 629 F.2d 961, 964 (4th Cir. 1980). Therefore, the Court will grant the Motions to Stay.

An appropriate order shall issue this day.

ENTERED: *[signature]*
United States District Judge

October 18, 2005
Date